**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

In re:                                          **NOT FOR PUBLICATION**

        MICHAEL D. SCHIMEK,          Chapter 7

                                Case No. 24-10213 (MG)

                     Debtor.

------------------------------------------------------------------x

GLORIA ALLRED,

                  Plaintiff,

                                 Adv. Pro. No. 24-01337 (MG)

vs.

MICHAEL D. SCHIMEK,

                  Defendant.

------------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER GRANTING DEBTOR-DEFENDANT'S MOTION TO DISMISS PLAINTIFF GLORIA ALLRED'S ADVERSARY COMPLAINT

*A P P E A R A N C E S:*

Michael D. Schimek, Esq.
*Pro se Debtor-Defendant*
220 Riverside Boulevard
Apartment 32A
New York, NY 10069

THE KANTROW LAW GROUP, PLLC
*Counsel for Plaintiff Gloria Allred*
732 Smithtown Bypass
Suite 101
Smithtown, NY 11787
By:    Fred S. Kantrow, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested motion (the "Motion," Adv. Pro. ECF Doc. # 4) of *pro se* defendant-debtor Michael Schimek ("Schimek," the "Debtor," or the "Defendant") to dismiss the adversary complaint (the "Complaint," Adv. Pro. ECF Doc. # 1) filed by plaintiff-creditor Gloria Allred (the "Creditor" or "Plaintiff"). The Complaint seeks entry of an order denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5). Annexed to the Motion is (i) a copy of the Complaint as Exhibit A and (ii) a copy of the Debtor's tax returns for the period ending December 31, 2021 as Exhibit B.

Plaintiff filed an opposition to the Motion ("Opposition," Adv. Pro. ECF Doc. #6) and the Debtor filed a reply (the "Reply," Adv. Pro. ECF Doc. #10). A hearing on the Motion was held on May 29, 2024.

For the reasons stated below, the Court **GRANTS** the Motion as to all four counts of the Complaint.

## I.   BACKGROUND

### A.  Relevant Case History

#### 1.  Commencement of the Chapter 7 Case

On February 8, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for chapter 7 relief (the "Petition," Main Case ECF Doc. #1). On February 9, 2024, Deborah Piazza was appointed interim chapter 7 trustee (the "Chapter 7 Trustee"). (*See Notice of Chapter 7 Bankruptcy Case, 341(a) Meeting of Creditors & Notice of Appointment of Interim Trustee Deborah Piazza*, Main Case ECF Doc. # 3.)

The Debtor's section 341(a) meeting was held on March 13, 2024. (*See Notice of 341(a) Meeting of Creditors*, Main Case ECF Doc. # 5 (scheduling the section 341(a) meeting for

2

March 13, 2024).)  One day later, the Chapter 7 Trustee filed a report of no distribution,

indicating that this is a "no asset" case.

2.  The Debtor's Original Schedules and Disclosures of Financial Information

As part of his Petition, the Debtor filed schedules (the "Original Schedules") disclosing

his financial information, which were subsequently corrected.  As noted in the Complaint, the

Debtor, a non-practicing attorney admitted to the New York bar, is currently unemployed and is

a "stay-at-home" dad.  (Complaint ¶ 8.)  He currently resides with his two minor children and

Lisa Weksler, the mother of his children, in an apartment located at 220 Riverside Boulevard,

Apartment 32A, New York, NY.  (*Id.* ¶ 9.)  Schimek and Weksler are in a long-term relationship

but are not, and have never been, married.

The Debtor indicates that he has not received any income since the fall of 2020 and thus

does not plan to file income tax returns for 2023 or 2024.  (Motion ¶ 2.)  Included with the

Debtor's Petition is Official Form 106Sum, which sets forth a summary of the Debtor's assets,

liabilities and income, as follows: (i) total assets in the amount of $3,745.00; (ii) total liabilities

in the amount of $32,484.00; and (iii) combined monthly income of $2,553.00 and monthly

expenses in the same amount.  (Petition at 8.)  The Petition also includes Debtor's Official Form

107 – Statement of Financial Affairs for Individuals Filing for Bankruptcy (the "Statement of

Financial Affairs"), which provides that the Debtor did not receive any income from employment

or from operating a business in 2024 or in the two prior calendar years.  (*Id.* at 28.)  According to

Schedule I, the Debtor is unemployed and "lives with mother of children who support him."  (*Id.*

at 23–24.)  Schedule I states that the "mother of debtor's children pays for the debtor's living

exp[enses]" in the amount of $2,553.00, which comprises the entirety of his combined monthly

income.  (*Id.* at 24.)

3

As the Complaint summarizes, the Original Schedules provide that the Debtor owns no household goods and furnishings or jewelry, possesses no cash, and owns solely a phone and clothing valued at $100.00. (Complaint ¶¶ 12–16.) Additionally, the Debtor has a Chase bank account with a balance of $300.00 and has no security deposits, licenses, executory contracts, or unexpired leases. (*Id.* ¶¶ 17–20.)

As for his household, Schedule J to the Petition discloses that the Debtor lives with two dependents, his son aged 11 and daughter aged 14. (*Id.* at 25.) The Debtor's Official Form 122A-1 – Chapter 7 Statement of Your Current Monthly Income (the "Statement of Current Monthly Income," Main Case ECF Doc. # 2) indicates that he lives in a household of three individuals with a total median family income of $101,266.00. (Statement of Current Monthly Income at 2.) Additionally, the Petition discloses that the Debtor paid a sum of $2,615.00 in attorneys' fees to his counsel. (*See* Petition at 41.) Plaintiff highlights that the Debtor's "means test" stated "no presumption of abuse" and specified an income of zero from any source, including "regular contributions from an unmarried partner." (Complaint ¶¶ 34–37.)

The Debtor's Original Schedules also disclosed Plaintiff Allred's pending civil lawsuit against him, captioned *Gloria Allred v. Michael Schimek*, CV-015966-16/NY in the Civil Court of the State of New York. (Petition at 30.) The lawsuit, the Debtor represents, has been pending for approximately eight years and involves an unsecured $25,000.00 breach of contract claim. (Reply ¶ 4.)

      3.  <u>Subsequent Amendments to the Debtor's Schedules and Related Disclosures of Financial Information</u>

On March 13, 2024, the same day as the section 341(a) meeting, the Debtor filed amended schedules and related disclosures as follows: (i) Schedules I and J (the "Amended Schedules I and J," Main Case ECF Doc. # 10); (ii) Statement of Financial Affairs (the

"Amended Statement of Financial Affairs," Main Case ECF Doc. # 11); (iii) Statement of

Current Monthly Income (the "Amended Statement of Current Monthly Income," Main Case

ECF Doc. # 12); and (iv) Disclosure of Compensation of Attorney of Record for Debtor (the

"Amended Disclosure of Attorney Compensation," Main Case ECF Doc. # 13).

The Amended Schedules I and J reflect updated combined monthly income of $0.00 and

monthly net income of negative $2,553.00. (Amended Schedules I and J at 2–4.) The Debtor

states that the monthly net expenses and income reflect an "estimate of debtor's living expenses,

which may vary depending on debtor's needs. He lives with the mother of his children who

covers his expenses." (*Id.* at 4.)

The Amended Statement of Current Monthly Income reflects that Debtor's household is

comprised of four (as opposed to three) individuals and includes an updated median family

income of $126,194.00. (Amended Statement of Current Monthly Income at 2.)

Finally, the Amended Statement of Financial Affairs and the Amended Disclosure of

Attorney Compensation reflect that Lisa Weksler paid the Debtor's attorneys' fees in the amount

of $2,615.00 plus filing fees and credit report fees. (Disclosure of Attorney Compensation at 1;

Amended Statement of Financial Affairs at 4.) The initial disclosure of attorney compensation

stated that the Debtor himself paid attorneys' fees in the amount of $2,615.00 with no mention of

filing fees or credit report fees. (*See* Petition at 41.)

On March 25, 2024, the Debtor filed amended Schedules A/B and C (Main Case ECF

Doc. # 25), showing that the balance in his Chase account was $1,075.81 as of the Petition Date,

and that he holds $3,145.00 in a Charles Schwab rollover IRA retirement account. (Main Case

ECF Doc. #25 at 3.) Previously, Schedules A/B reflected a balance of $300.00 in the Chase

bank account, a figure that was "listed for precuationary [sic] measures," and the Charles

Schwab retirement account was originally identified as a 401(k) rather an IRA account.  (Petition at 12.)

### 4.  Plaintiff's *Ex Parte* Rule 2004 Motions

On March 13, 2024, Plaintiff filed two *ex parte* motions seeking discovery pursuant to Bankruptcy Rule 2004 to "test the veracity of the Debtor's sworn statements" in his Petition and related schedules.  (*Creditor's Application Seeking Entry of an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure to Obtain Documents from Riverside Boulevard LLC and Serve a Subpoena* (the "Riverside Boulevard Rule 2004 Motion"), Main Case ECF Doc. # 15 ¶ 5.)  The first of the two motions (the "Weksler Rule 2004 Motion," Main Case ECF Doc. #14, and together with the Riverside Boulevard Rule 2004 Motion, the "Rule 2004 Motions") sought entry of an order authorizing service of a subpoena on Lisa Weksler, directing production of certain documents.  Similarly, the Riverside Boulevard Rule 2004 Motion sought entry of an order authorizing service of a subpoena on Riverside Boulevard LLC, directing production of certain documents.  The Debtor opposed the 2004 Motions.

On March 20, 2024, the Court granted the Rule 2004 Motions (the "Rule 2004 Motions Order," Main Case ECF Doc. # 21).  However, the Court limited the relief with respect to the Weksler Rule 2004 Motion to the production of documents and an examination of Ms. Weksler "limited solely to information concerning the 'acts, conduct, or property or to the liabilities and financial condition of the debtor.'"  (Rule 2004 Motions Order ¶ 2 (quoting FED. R. BANKR. P. 2004(b)).)  The Court made clear that "[t]here shall not be an examination of Ms. Weksler's personal financial condition."  (*Id.*)

### 5.  Withdrawal of Counsel

While originally represented by counsel in his chapter 7 case, the Debtor's attorney filed a motion to withdraw as counsel on April 3, 2024 (Main Case ECF Doc. # 27), which the Court

granted on April 25, 2024 (Main Case ECF Doc. # 30). Accordingly, the Debtor is now

appearing *pro se* in the bankruptcy case and adversary proceeding.

### B. The Adversary Complaint

On April 4, 2024, Plaintiff filed the Complaint, commencing this adversary proceeding.[1]

The Complaint seeks to deny the Debtor a discharge pursuant to sections 727(a)(2)(A),

727(a)(3), 727(a)(4)(A), and 727(a)(5) of the Bankruptcy Code. (Complaint at 1.)

The Complaint alleges that the Debtor's disclosures in Schedule I were "facially

inconsistent" with the Debtor's disclosure in the Statement of Financial Affairs, which sets forth

the means test.[2] (*Id.* ¶ 41.) Specifically, the Complaint asserts that the means test does not

accurately set forth the number of persons residing in the household, fails to disclose household

income, and is therefore false under any definition of "household" that courts have used. (*Id.* ¶¶

42–45.)

The Complaint asserts four separate grounds to deny the Debtor a discharge. *First*, he

should be denied a discharge under section 727(a)(2)(A) for "shielding his income via his non-

filing partner who funds all of the Defendant's expenses . . . ." (*Id.* ¶¶ 48–49.)

*Second*, the Debtor should be denied a discharge under section 727(a)(3) for

"conceal[ing] information relating to his financial condition." (*Id.* ¶¶ 52–53.)

*Third*, although the Debtor is entitled to amend his schedules, which he did, the Debtor

swore to the completeness and truthfulness of the Original Schedules. (*Id.* ¶ 56.) More

specifically, the Debtor "failed to truthfully disclose his assets," and the "petition and schedules

---

[1]    As set forth in the Complaint, Plaintiff "consents to the entry of final orders and judgement by this Court determining such causes of action." (Complaint ¶ 5.)

[2]    Plaintiff appears to be referring to the original Schedule I that was filed, which specified a household size of three as opposed to four. As discussed, the Debtor subsequently filed an amended Schedule I to reflect a household size of four.

contain materially false and misleading statements." (*Id.* ¶¶ 57–58.) Accordingly, the Debtor should be denied a discharge under section 727(a)(4)(A) because he "made a false oath or account each time he swore to the truthfulness of his petition and schedules." (*Id.* ¶¶ 59–60.)

*Fourth*, the Debtor should be denied a discharge under section 727(a)(5) because he "failed to explain satisfactorily any loss of assets or deficiency of asset to meet the Defendant's liabilities by failing to accurately disclose the Defendant's household income as required." (*Id.* ¶ 64.) According to Plaintiff, had the Debtor "accurately disclosed the 'household' income in his chapter 7 petition and schedules[,] he would not have qualified for chapter 7 relief and creditors would be entitled to a distribution in chapter 13." (*Id.* ¶ 63.)

### C. The Motion to Dismiss

The Debtor moved to dismiss the Complaint for failure to state a claim. (Motion at 1.) The Debtor argues that the Complaint is "replete with general accusations, innuendos and suppositions that fail to meet the Second Circuit's exacting standard for Creditor claims under 11 U.S.C. 727." (*Id.*) These standards, the Debtor believes, require that Plaintiff's claims be "construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." (*Id.* (quoting *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006).) Additionally, any purported fraud claims must be alleged with "sufficient particularity and specificity so that facts alleged 'give rise to a strong inference of fraudulent intent.'" (*Id.* at 2 (quoting *Ray v. Ray*, 799 Fed. Appx. 29, 32 (2d Cir. 2020)).)

The Debtor clarifies that while he listed his two children as his dependents, they are not, in fact, financially dependent on him. (*Id.* ¶ 4.) Additionally, he states that Ms. Weksler pays for all living expenses directly herself and does not pay him anything. (*Id.* ¶¶ 4, 15.) The Debtor

sought bankruptcy protection due to a lack of income and minimal assets against a backdrop of unsecured, disputed debts that he is unable to pay. (*Id.* ¶ 5.)

The Debtor argues that the Complaint's allegations that he violated section 727(a) of the Bankruptcy Code fail as a matter of law because he did not submit false schedules; he did not fail to retain necessary documents; and he does not possess secret assets that should otherwise be available to creditors. (*Id.* ¶ 6.)

*First*, with respect to the claims under sections 727(a)(2) and (4), the Debtor contends the claims lack merit since the Debtor (i) "voluntarily and truthfully disclosed his assets/income" and (ii) did not "hinder, delay or defraud his creditor nor make a false oath/account in violation of the Bankruptcy Code." (*Id.* ¶ 7.) The Debtor disclosed that he lives with Ms. Weksler and his two children, produced his tax returns and bank records reflecting approximately a $1,000.00 account balance, and timely amended his schedules to reflect the correct amounts. (*Id.* ¶ 8.)

The Debtor argues that a determination of what constitutes a "household" for purposes of the means test remains an unsettled issue. (*See id.* ¶ 12 (discussing the lack of consensus on the matter as Judge Gropper recognized in *In re Fletcher*, No. 12-11961 (ALG), 2013 WL 1386265, at *6 (Bankr. S.D.N.Y. Apr. 4, 2013).) In the absence of a clear legal standard, the Debtor argues, it is improper to suggest, as Plaintiff does, that the Debtor committed fraud under section 727. (*Id.* ¶ 9.) The Debtor states that he listed his children as dependents in the sense that they are his children as opposed to financial dependents. (*Id.* ¶ 10.) Computing household size differently than Plaintiff's counsel would have calculated it, the Debtor contends, is "hardly 'fraud' or an attempt to hide assets from the Court or Creditor." (*Id.* ¶ 11.)

*Second*, Plaintiff's claim seeking to deny a discharge under section 727(a)(3) is unwarranted, the Debtor argues, as the Complaint fails to identify what documents the Debtor

"purportedly falsified or failed to maintain." (*Id.* ¶ 13.)  The Debtor produced his tax returns and

an affidavit attesting to his lack of income for calendar years 2023 and 2024.  (*Id.*)

*Third*, Plaintiff's claims under section 727(a)(5) lack specificity regarding what assets

were dissipated or hidden and are therefore deficient as a matter of law.  (*Id.* ¶ 14.)

*Lastly*, the Debtor concedes he is uncertain about the appropriate standard to use for

determining household size for the purposes of the means test.  (*Id.* ¶ 15.)  He notes that courts

have adopted three general approaches to determining household size: (i) the "heads-on-beds"

approach; (ii) the IRS income tax dependent approach; and (iii) the economic unit approach.  (*Id.*

(citing *Johnson v. Zimmer*, 686 F.3d 224 (4th Cir. 2012)).)  Irrespective of the approach the

Court ultimately adopts, the Debtor argues, he will satisfy the means test since he has no income,

and his expenses fall below the amount permitted under the Bankruptcy Code.  (*Id.* ¶ 16.)

Therefore, the Debtor believes he is entitled to seek chapter 7 relief, and the results would be no

different if he were seeking chapter 13 relief.  (*Id.* ¶¶ 16–17.)  The Debtor requests that, to the

extent chapter 7 is unavailable to him, he should be permitted to have a chapter 13 plan that

permits creditors to be paid the approximately $1,000.00 from his Chase bank account.  (*Id.* ¶

17.)

### D.  Plaintiff's Opposition

Plaintiff opposes the Motion, arguing that the Debtor's arguments "miss the mark" and

fail to provide a basis to dismiss the Complaint.  (Opposition ¶ 2.)  Plaintiff argues the Complaint

satisfies required pleading standards.  (*Id.* ¶ 45.)  Alternatively, to the extent the Motion is one

for summary judgment (that is otherwise disguised as a motion to dismiss), the Debtor, Plaintiff

argues, has failed to provide the Court with the standards to grant summary judgment, and, in

any case, the Motion does not otherwise meet their requirements.  (*Id.* ¶ 46.)

Plaintiff first asserts that the allegations in the Complaint must be deemed true and interpreted liberally in Plaintiff's favor. (*Id.* ¶¶ 12–20.) Rule 8(a) of the Federal Rules of Civil Procedure provides that a pleading stating a claim for relief need only contain a "short and plain statement" of grounds for the Court's jurisdiction and the claims showing that the pleader is entitled to relief and a demand for the relief sought. (*Id.* ¶ 12.) No legal argument is necessary, and a Court must accept as true all well-pleaded facts alleged, reading the complaint generously and drawing all reasonable inferences in favor of the pleading party. (*Id.* ¶¶ 13–14.)

Similarly, for dismissal under Rule 12(b)(6), a complaint need not include detailed factual allegations but rather simply provide a defendant "fair notice" of the claim and the grounds upon which it rests. (*Id.* ¶ 16 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).) The Court should read the alleged facts in the Complaint generously, drawing all reasonable inferences in favor of a plaintiff. (*Id.* ¶ 17.) Here, Plaintiff contends, the Complaint alleges facts "sufficient to put the Defendant on notice of the Plaintiff's claims against him." (*Id.* ¶ 20.) Plaintiff argues that the Motion is, in essence, one for summary judgment as opposed to a motion to dismiss. (*Id.*)

Additionally, Plaintiff contends that the Motion improperly asserts and relies on affirmative defenses, which should typically be included in an answer. (*Id.* ¶ 21.) Motions to dismiss in the Second Circuit cannot be decided by affirmative defenses unless it is otherwise clear that "the defense appears on the face of the complaint." (*Id.* (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP*, 322 F.3d 147, 158 (2d Cir. 2003)).)

Furthermore, the Complaint, Plaintiff argues, pleads fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.* ¶¶ 22–26.) The Complaint was

based on the information the Debtor provided in his Petition and related schedules, and Plaintiff

notes that Ms. Weksler "failed to claim the subpoena which was served via certified mail and . . .

comply with the obligations set forth [therein]." (*Id.* ¶ 22.) Ultimately, adequate discovery is

necessary, Plaintiff argues, to properly address the Complaint and the Debtor's affirmative

defenses. (*Id.* ¶ 23.) At this stage, the Complaint need only allege sufficient facts to permit the

Debtor a reasonable opportunity to frame a responsive pleading, which his Motion establishes is

the case. (*Id.* ¶¶ 24–26.)

In light of the foregoing, Plaintiff asserts that the Motion should be denied, and Plaintiff's

claims sustained. (*Id.* ¶¶ 27–44.) *First*, Plaintiff's claims arising under sections 727(a)(2)(A)

and 727(a)(3) should be permitted to proceed to trial. (*Id.* ¶¶ 32, 36.) The Debtor, Plaintiff

argues, has "access to unlimited funds made available to him via his non-filing partner" and may

therefore "manipulate amounts available to his creditors." (*Id.* ¶ 32; *see also id.* ¶ 36.) In his

bankruptcy filing, Plaintiff firmly believes that the Debtor "elected to determine that he had no

income and therefore no funds to pay his creditors." (*Id.* ¶ 32.)

*Second*, relief under section 727(a)(4)(A) is warranted since the Debtor (i) knowingly

made fraudulent false oaths, and (ii) the Petition and related schedules contain "myriad false

statements." (*Id.* ¶ 37.) The Debtor's amendments to his schedules, Plaintiff argues, do not cure

his initial misstatements or omissions, and they too lacked accuracy. (*Id.* ¶¶ 39–40 (citing

*Virovlyanskaya v. Virovlyanskiy (In re Virovlyanskiy)*, 485 B.R. 268 (Bankr. E.D.N.Y. 2013)).)

Plaintiff contends that the Debtor's manipulation of income and expenses and falsification of the

means test caused the Petition and related schedules to contain "materially false and misleading

statements." (*Id.* ¶ 40.) Each time he swore to the truthfulness of the documents, he made a

"false oath or account." (*Id.*)  As a sophisticated individual (the Debtor is an attorney), he should have known better. (*Id.*)

*Third*, the Debtor's assertion that his failure to complete the means test accurately should not be held against him since his attorney completed the form, Plaintiff argues, is without merit as the Debtor ultimately swore to its accuracy. (*Id.* ¶ 41.)  This, in any event, is a matter that should be determined at trial. (*Id.* ¶ 44.)  Plaintiff asserts that the Court should apply the ordinary meaning of "household" to determine its meaning as the term is undefined in the Bankruptcy Code. (*Id.* ¶ 42.)  Characterizing the Motion as one encouraging the Court to adopt the economic unit definition of "household," Plaintiff argues that this approach would be consistent with statutory language and the goal of the means test. (*Id.* ¶ 44.)  Under this approach, a Court would need to include "those individuals who operate as a single economic unit with the debtor" and, therefore, include Ms. Weksler. (*Id.*)  Going down this path would render the Debtor's means test, which fails to disclose Ms. Weksler's "significant income," patently false. (*Id.*)

### E. The Reply

On May 21, 2024, the Debtor filed the Reply.  The Debtor argues that the Opposition does not permit Plaintiff to overcome the Second Circuit's "exacting standard for creditor claims under 11 U.S.[C.] § 727." (Reply at 1.)  Specifically, the Debtor contends that Plaintiff has failed to plead fraud claims with "sufficient particularity and specificity" that would "give rise to a strong inference of fraudulent intent." (*Id.* at 2.)  As with the Motion, the Reply argues that the Complaint is "replete with broad generalizations, suppositions and conclusions" and is "short on alleged facts," as required by the Second Circuit to support a claim for fraud. (*Id.* ¶ 1; *see also id.* ¶ 3 (stating that Plaintiff provides "no facts supporting the necessary fraudulent intent

13

required to pursue the claims or theories she asserts").)  The Debtor again denies any claim of

fraud as it would make "no logical sense" to commit fraud simply to avoid Plaintiff's $25,000

claim.  (*Id.* ¶ 4.)  Therefore, the Complaint should be dismissed as a matter of law.  (*Id.*)

## II.   <u>LEGAL STANDARD</u>

### A.  Motions to Dismiss

To survive a motion to dismiss under Civil Rule 12(b)(6), made applicable here by Rule

7012 of the Federal Rules of Bankruptcy Procedure, a complaint need only allege "enough facts

to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604

F.3d 703, 709 (2d Cir. 2010) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  Plausibility "is not akin to a probability requirement," but rather requires "more than a

sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation and

internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citations omitted); *see also*

*Twombly*, 550 U.S. at 555 (stating that a pleading that offers "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do").  "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*,

550 U.S. at 556).

Courts use a two-pronged approach when considering a motion to dismiss. *Pension*

*Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that

motion to dismiss standard "creates a 'two-pronged approach' . . . based on '[t]wo working

principles'") (quoting *Iqbal*, 556 U.S. at 678–79)); *McHale v. Citibank, N.A.* (*In re the 1031 Tax*

*Grp., LLC*), 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009) (stating that courts use a two-prong

approach when considering a motion to dismiss).  First, a court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb.  *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678).  Second, a court must determine if these well-pleaded factual allegations state a plausible claim for relief—"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice, such as public records, including complaints filed in state courts. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citations omitted).

### B. Fraudulent Intent

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), made applicable in adversary proceedings by Rule 7009 of the Federal Rules of Bankruptcy Procedure, applies to pleadings alleging fraud: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).  When Rule 9(b) applies, to survive a motion to dismiss, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).

Courts require fraudulent intent in an action for denial of discharge under section 727 to be "actual intent as distinguished from constructive intent." 6 COLLIER ON BANKR. ¶ 727.02[3][a] (16th ed. 2024). "Whether the debtor had the necessary wrongful intent is a question of fact." *Id.* at 727.02[3][d]. Actual fraudulent intent "may be based on circumstantial evidence or on [strong] inferences drawn from a course of conduct." *Id.* at 727.02[3][b]. A plaintiff can establish strong inferences of fraudulent intent either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

In addition, "[d]ue to the difficulty of proving intent, plaintiffs may rely on badges of fraud—circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Holliday v. K Road Power Mgmt., LLC (In re Boston Generating LLC)*, 617 B.R. 442, 472 (Bankr. S.D.N.Y. 2020) (internal quotation marks omitted) (quoting *Techno-Comp. Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 745 (E.D.N.Y. 2015)). These "badges of fraud" include:

> [A] close relationship between the parties to the conveyance; inadequacy of consideration received; retention of control of the property by the transferor; suspicious timing of the conveyance after the debt was incurred; the use of fictitious parties; information that the transferor was insolvent as a result of the conveyance; the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; the general chronology of the events and transactions under inquiry; a questionable transfer not in the usual course of business; and the secrecy, haste, or unusualness of the transaction.

16

*Official Comm. of Unsecured Creditors of Vivaro Corp. v. Leucadia Nat'l Corp.* (*In re Vivaro Corp.*), 524 B.R. 536, 554 (Bankr. S.D.N.Y. 2015) (citations omitted); *see also Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983) (listing the same factors).

### III.   DISCUSSION

#### A.  Scope of the Debtor's Bankruptcy Estate.

As a threshold matter, the Court must determine whether the Debtor's bankruptcy estate encompasses Ms. Weksler's income.  Section 541(a) of the Bankruptcy Code provides, in relevant part, that an estate includes:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
>
> > A. under the sole, equal, or joint management and control of the debtor; or
> >
> > B. liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable. . . .
>
> . . . .
>
> (7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. §§ 541(a)(1), (a)(2), (a)(7).  Generally, "[p]roperty interests are created and defined by state law."  *Butner v. U.S.*, 440 U.S. 48, 55 (1979).

Here, the Debtor submits that he and Ms. Weksler are unmarried.  (*See, e.g.*, Motion at 3 n.1 ("Ms. Weksler has been . . . an emotional and romantic partner [of the Debtor] for twenty plus years.").)  In New York state, marriage is a civil contract.  *See* N.Y. DOM. REL. LAW § 10 (McKinney 2005) ("Marriage, so far as its validity in law is concerned, continues to be a civil

contract, to which the consent of parties capable in law of making a contract is essential."").

Plaintiff does not dispute that Schimek and Weksler are *not* married; however, Plaintiff

repeatedly refers to Ms. Weksler solely as the Debtor's "partner."  (*See, e.g.*, Complaint ¶ 48

(referring to Ms. Weksler as a "non-filing partner"); *id.* ¶ 63 (identifying Ms. Weksler simply as

the Debtor's "non-filing 'partner'" in quotation marks); Opposition ¶ 9 (referring to Ms. Weksler

simply as the Debtor's "non-filing partner"); *id.* ¶ 11 (same); *id.* ¶ 28 (same).)

As Schimek and Weksler are not married, absent a binding contract between them, the

Debtor possesses no "legal or equitable interests" in Ms. Weksler's income and section 541(a)(2)

is therefore inapplicable.  *See, e.g.*, *Potter v. Davie*, 713 N.Y.S.2d 627, 629 (N.Y. App. Div.

2000) (affirming the lower court's dismissal of dissolution of a common-law marriage and

equitable distribution of marital property since "New York does not recognize a common-law

marriage absent contact by the parties with a jurisdiction that recognizes such relationship as a

legal marriage"); *see also* 11 U.S.C. § 541(a)(2)(A) (including as part of the debtor's estate all

interests of the debtor and the debtor's spouse in community property that is under the "sole,

equal, or joint management and control of the debtor").  As the Court explained at the hearing on

the Motion, "[b]ecause household income is the debtor's income and all property rights are

decided by State law, not federal bankruptcy law . . . [Plaintiff] can't import into the

[B]ankruptcy [C]ode an obligation for Ms. Wexler [sic] to include her assets or income as part of

the debtor's estate."  (May 29, 2024 Hr'g Tr. at 15:8–12.)

Were the Debtor and Ms. Weksler in a "domestic partnership" as recognized under New

York law, the Debtor might possess "legal or equitable interests" in Ms. Weksler's income if the

parties had otherwise agreed to it.  "An express oral agreement may create a 'domestic

partnership' between unmarried cohabiting persons, provided that the agreement is not based or

18

dependent upon illicit sexual relations for its consideration and does not have an unlawful or

immoral objective." *Potter*, 713 N.Y.S.2d at 630 (citing *Morone v. Morone*, 429 N.Y.S.2d 592,

594–95 (N.Y. 1980)).  Such agreements may delineate what contributions and efforts were

required of one party and how much the other party was to pay in compensation.  *See generally*

*Potter*, 713 N.Y.S.2d 627 (affirming the lower court's dismissal of a cause of action for

dissolution of an alleged domestic partnership and distribution of its alleged assets as no express

agreement could be established that identified what contributions and efforts were required of

plaintiff and how much defendant was required to pay in compensation).  However, "no

agreement will be inferred . . . based upon the quasi-marital relationship between the parties."

*Id.* at 630.

Here, the Motion provides only that the Debtor, as a stay-at-home dad, does not make any

financial contribution to the household or pay for any expenses, and does not receive any funds

from Ms. Weksler who pays all the household bills.  (Motion ¶ 4.)  Neither the Complaint, nor

Plaintiff's counsel during the hearing, have contended otherwise.

Since the record indicates the Debtor and Ms. Weksler are neither married nor in a

"domestic partnership" as recognized under New York law, absent an express contract

connecting the Debtor to Ms. Weksler's income, only Ms. Weksler's direct financial support to

the Debtor might be incorporated into the estate.  *See* 11 U.S.C. § 101(10A)(B)(i) (stating that

"'current monthly income' . . . includes any amount paid by any entity other than the debtor . . .

on a regular basis for the household expenses *of the debtor* or the debtor's dependents . . . .")

(emphasis added).  However, the Court need not determine whether the financial support *must* be

incorporated because either determination will produce the same result.

Plaintiff claims that the Debtor's disclosures in Schedule I and in the Statement of

Financial Affairs are inconsistent. Plaintiff claims that the Debtor failed "accurately [to] set

forth the number of persons residing in the household . . .[,] fail[ed] to disclose household

income[,] and [his disclosures] therefore [are] false" under any definition of "household" that

courts have used. (Complaint ¶¶ 42–45.) These inconsistent disclosures are relevant, Plaintiff

claims, because they unlawfully affected the calculation of the means test, thereby diminishing

the size of the bankruptcy estate. Plaintiff asserts that were the means test calculated correctly,

the Debtor would not qualify for chapter 7 relief, and the Creditor "would be entitled to a

distribution in chapter 13." (*Id.* ¶ 63.)

While Plaintiff highlights inconsistencies in the Debtor's disclosures, the Debtor's

prompt corrections and general candor preclude claims of fraud. More importantly, as the

Debtor correctly notes, incorporating Ms. Weksler's financial support into the Debtor's income

does not enlarge the bankruptcy estate. Supporting his claim, the Debtor's Motion cites *Zimmer*,

686 F.3d 224, which identified three general approaches courts have adopted to determine

household size: (i) the "heads-on-beds" approach; (ii) the IRS income tax dependent approach;

and (iii) the economic unit approach. (Motion ¶ 15.)

The *Zimmer* court explains that calculating "household" size is important to determine

accurately a debtor's "projected disposable income" for the creation of a chapter 13 plan. *See

Zimmer*, 686 F.3d at 230–31; *see also Hamilton v. Lanning*, 560 U.S. 505 (2010). In *Hamilton*,

Justice Alito thoroughly explained:

> BAPCPA left the term "projected disposable income" undefined but
> specified in some detail how "disposable income" is to be calculated.
> "Disposable income" is now defined as "current monthly income received
> by the debtor" less "amounts reasonably necessary to be expended" for the
> debtor's maintenance and support, for qualifying charitable contributions,
> and for business expenditures. §§ 1325(b)(2)(A)(i) and (ii) (2006 ed.).

20

> "Current monthly income," in turn, is calculated by averaging the debtor's monthly income during what the parties refer to as the 6-month lookback period, which generally consists of the six full months preceding the filing of the bankruptcy petition. *See* § 101(10A)(A)(i). The phrase "amounts reasonably necessary to be expended" in § 1325(b)(2) is also newly defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for "maintenance or support," *see* § 1325(b)(2)(A)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included, *see* §§ 707(b)(2) (2006 ed. and Supp. II), 1325(b)(3)(A) (2006 ed.).

*Hamilton*, 560 U.S. at 510. Justice Alito further explains that the above "formula" is termed the "means test." *See id.* at 510 n.2.

Incorporating Ms. Weksler's financial support into the Debtor's "current monthly income" would raise Schimek's current monthly income from $0.00 to $2,553.00. (*See* Petition at 8.) According to median family income data provided by the Census Bureau, the monthly median family income in New York is $5,761.25 for a household of one, $7,295.833 for a household of two, $8,786.25 for a household of three, and $10,949.083 for a household of four. *See* Census Bureau, *Census Bureau Median Family Income By Family Size*, Justice, (May 14, 2024), https://www.justice.gov/ust/eo/bapcpa/20240401/bci_data/median_income_table.htm. Including Ms. Weksler's financial support, the Debtor's "currently monthly income" is below the median family income for a household of any size in New York. Therefore, Schimek's "current monthly income" of $2,553.00 would constitute "amounts reasonably necessary to be expended" pursuant to section 1325(b)(2). Thus, Schimek's "current monthly income" of $2,553.00, less "amounts reasonably necessary to be expended" of $2,553.00, leaves him with a "disposable income" of $0.00, making him ineligible for chapter 13 relief, and moreover, not enlarging the bankruptcy estate.

Absent a contract connecting the Debtor to Ms. Weksler's income, which Plaintiff has not alleged and which Schimek denies, the Debtor's inconsistent disclosures made no material

impact on the means test, and thus did not diminish the size of the bankruptcy estate regardless of whether the estate incorporates Ms. Weksler's financial contributions.

**B.  First & Third Causes of Action – §§ 727(a)(2)(A) & 727(a)(4)(A).**

The Debtor seeks to dismiss Plaintiff's Complaint denying the Debtor's discharge under sections 727(a)(2)(A) and 727(a)(4)(A) of the Bankruptcy Code.  Plaintiff claims that the Debtor's "shielding [of] his income via his non-filing partner who funds all of the Defendant's expenses, is inconsistent with the Bankruptcy Code." (Complaint ¶ 48.)  Plaintiff contends this serves as grounds to deny his discharge under section 727(a)(2)(A).  (*Id.* ¶¶ 48–49.)

Plaintiff also claims that the Debtor swore to the truthfulness of the Original Schedules and the completeness of the information set forth therein.  (*Id.* ¶ 56.)  While the Debtor is entitled to amend the Petition and schedules, which he did, Plaintiff nonetheless contends that the Debtor "failed to truthfully disclose his assets," and the Debtor's "petition and schedules contain materially false and misleading statements." (*Id.* ¶¶ 57–58.)  Accordingly, Plaintiff argues that the Debtor "made a false oath or account each time he swore to the truthfulness of his petition and schedules," warranting a denial of discharge under section 727(a)(4)(A).  (*Id.* ¶¶ 59–60.)

The Debtor contends that these claims are without legal merit since he (i) "voluntarily and truthfully disclosed his assets/income" and (ii) did not "hinder, delay or defraud his creditor nor make a false oath/account in violation of the Bankruptcy Code." (Motion ¶ 7.)  The Debtor disclosed that he lives with Ms. Weksler and their two children; he produced his tax returns and bank records reflecting approximately a $1,000.00 account balance; and he amended his schedules to reflect the correct amounts (which did not materially differ from the amounts included in his initially filed schedules). (*Id.* ¶ 8.)

The Debtor correctly argues that a determination of what constitutes a "household" for purposes of the means test remains unsettled. (*See id.* ¶ 12 (discussing the lack of consensus on the matter as Judge Gropper recognized in *Fletcher*, 2013 WL 1386265, at *6).) In the absence of a clear legal standard, it is improper, the Debtor believes, for Plaintiff to argue that the Debtor committed fraud under section 727. (*Id.* ¶ 9.) The Debtor accurately listed his children as dependents, in the sense that they are his children as opposed to financial dependents. (*Id.* ¶ 10.) Computing household size for purposes of the means test in a manner that is different from how Plaintiff's counsel would calculate it is "hardly 'fraud' or an attempt to hide assets from the Court or Creditor." (*Id.* ¶ 11.)

Section 727(a)(2)(A) of the Bankruptcy Code provides that a Court shall deny discharge if:

> [T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition . . . .

11 U.S.C. § 727(a)(2)(A).

Section 727(a)(2)(A) is intended to "prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets." 6 COLLIER ON BANKR. ¶ 727.02[1] (16th ed. 2024).

Section 727(a)(4)(A) denies discharge if a debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To show cause under this subsection, five elements must be proven: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the

bankruptcy case. *Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 Fed. Appx. 711, 715 (2d Cir. 2009) (citations omitted).

As explained above, even incorporating Ms. Weksler's financial support into the Debtor's income results in no material change to the size of the Debtor's bankruptcy estate. Therefore, the Court finds that Plaintiff has failed to allege facts sufficient to state a plausible claim for relief. Plaintiff made no other factual allegations indicating fraudulent intent—no circumstantial evidence, course of conduct, motive and opportunity, conscious misbehavior or recklessness, nor badges of fraud.

Plaintiff argues that the Debtor's petition and schedules contain "materially false and misleading statements" and that he made "a false oath or account each time he swore to the truthfulness of his petition and schedules." (Complaint ¶¶ 58–59.) This might be true if the Debtor had failed to amend his schedules promptly to reflect that his Chase account showed a balance of approximately $1,000, rather than the $300 he originally "listed for precuationary [sic] measures." (Petition at 12.) In *Montanaro*, a case cited by the Debtor, the court held that there was no fraud when a debtor had readily and voluntarily produced documentation at the section 341(a) meeting of creditors. *See In re Montanaro*, 398 B.R. 688, 690–91 (Bankr. W.D. Mo. 2008) (noting that "the Debtors' conversion of even the entire $9,000 into IRAs does not constitute a 'very great amount' of money when compared to the cases in which the Eighth Circuit has found no fraudulent intent").

Similarly, here, the Debtor readily and voluntarily amended the schedules before the section 341(a) meeting, and the Chapter 7 Trustee found no issues with the Debtor's schedules or reporting of his financial condition.

While the Petition and Original Schedules contained inaccurate information, those inaccuracies were promptly corrected, and were, in any event, immaterial. As Plaintiff's counsel conceded, the corrections "reduced the size of his estate rather tha[n] increase [it]." (May 29, 2024 Hr'g Tr. at 20:8–10.) "[A]n occasional omission of facts is seldom sufficient to establish a claim of false oath." *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 462 (Bankr. S.D.N.Y. 2008) (quoting *Reynolds v. Trafford (In re Trafford)*, 377 B.R. 387, 394 (Bankr. M.D. Fla. 2007)). Thus, Plaintiff has failed to demonstrate cause to deny the discharge pursuant to sections 727(a)(2)(A) or 727(a)(4)(A) of the Code.

The Court concludes that dismissal of the first and third causes of action is justified and should be granted.

## C. Second Cause of Action – § 727(a)(3).

The Complaint also seeks a denial of discharge pursuant to section 727(a)(3), which provides that discharge may be denied where:

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11 U.S.C. § 727(a)(3).

Plaintiff claims that by "failing to disclose accurate information" in the Petition and related schedules, the Debtor "concealed information relating to his financial condition," warranting a denial of discharge pursuant to section 727(a)(3). (Complaint ¶¶ 52–53.)

The Debtor asserts that denial of discharge under section 727(a)(3) is unwarranted and the claim should be dismissed as the Complaint fails to identify what documents the Debtor "purportedly falsified or failed to maintain." (Motion ¶ 13.) The Debtor produced his tax returns and an affidavit attesting to his lack of income for calendar years 2023 and 2024. (*Id.*)

25

Having already concluded that incorporating Ms. Weksler's financial support into the Debtor's income effects no material change in the size of the bankruptcy estate, *supra*, the Court finds that Plaintiff failed to allege facts sufficient to state a plausible claim for relief pursuant to section 727(a)(3).

"The purpose and intent of [§ 727(a)(3)] of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Cacioli*, 463 F.3d at 234 (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936)) (modifications in original). It is, in essence, a "record-keeping requirement." *Id.* at 235. To assert "that a court should bar a debtor's discharge under section 727(a)(3), the party objecting to discharge must [first] demonstrate: '(1) that the debtor failed to keep or preserve adequate records; and (2) 'that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.'''" *Piazza v. Bruno, Jr. (In re Bruno)*, No. 23-01001 (JLG), 2023 WL 3139919, at *5 (Bankr. S.D.N.Y. Apr. 27, 2023) (quoting *Jacobowitz v. Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 436 (S.D.N.Y. 2004)).

Here, the Complaint alleges that the Debtor's failure to "disclose accurate information on his petition and schedules" reflects the Debtor's "conceal[ment] [of] information relating to his financial condition," warranting a denial of discharge pursuant to section 727(a)(3). (Complaint ¶ 52.) However, section 727(a)(3) focuses on a debtor's bookkeeping and looks to whether a debtor has "provide[d] reasonable records so that his creditors may ascertain the debtor's present financial condition and the nature of any business transactions that occurred within a reasonable period prior to filing." *Jacobowitz*, 309 B.R. at 436. Its focus, therefore, is not on the petition and schedules themselves, but rather whether the debtor has maintained sufficient records to support the information reported therein. *See, e.g.*, *id.* at 437 (examining whether the debtor's

26

submitted tax returns allowed creditors to ascertain the debtor's financial condition or reconstruct business transactions and supported his report that he had substantial business income and expenses for the first half of 2002).

Accordingly, Plaintiff's reliance on section 727(a)(3) is misplaced, and the Court concludes that the second cause of action must be dismissed.

### D.  Fourth Cause of Action - §727(a)(5).

The Debtor also seeks to dismiss the fourth cause of action seeking to deny discharge under section 727(a)(5) of the Bankruptcy Code.

Plaintiff alleges that the Debtor "failed to explain satisfactorily any loss of assets or deficiency of asset to meet the Defendant's liabilities by failing to accurately disclose the Defendant's household income as required."  (Complaint ¶ 64.)  Plaintiff believes that had the Debtor "accurately disclosed the 'household' income in his chapter 7 petition and schedules, he would not have qualified for chapter 7 relief and creditors would be entitled to a distribution in chapter 13."  (*Id.* ¶ 63.)  Therefore, Plaintiff argues, denial of discharge under section 727(a)(5) of the Bankruptcy Code is warranted.  (*Id.* ¶ 65.)

The Debtor argues that Plaintiff's claim pursuant to section 727(a)(5) lacks specificity as to what assets were dissipated or hidden and is deficient as a matter of law.  (Motion ¶ 14.)

To survive a motion to dismiss a claim arising under section 727(a)(5), a complaint "must allege a loss or deficiency of assets" as well as a debtor's "failure to satisfactorily explain the loss." *Robinson v. Robinson (In re Robinson)*, 595 B.R. 148, 161 (Bankr. S.D.N.Y. 2019).  In general, section 727(a)(5) is broad enough to "include any unexplained disappearance or shortage of assets" and looks to whether there is "some evidence of the disappearance of substantial assets or of unusual transactions."  6 COLLIER ON BANKR. ¶ 727.08 (16th ed. 2024).

27

Once a plaintiff establishes both the loss or deficiency and the omission of satisfactory explanation, the burden shifts to the debtor to "satisfactorily explain what happened." *Id.* The Court concludes that the Debtor sufficiently explained all "loss and deficiency of assets," and thus Plaintiff failed to show that cause exists under section 727(a)(5).

Having already determined that the Debtor is ineligible for chapter 13 relief, and that incorporating Ms. Weksler's financial support into the Debtor's income effects no material change on size of the bankruptcy estate, the Court concludes that the Complaint fails to assert sufficiently the Debtor's failure to explain the alleged "loss" of assets, indicating only that the Debtor failed to disclose his household income accurately. Since factual allegations in the Complaint relating to section 727(a)(5) lack sufficient specificity to establish a plausible claim for relief, the Court concludes that cause exists to dismiss the fourth cause of action.

## IV.   CONCLUSION

For the reasons discussed, the Court **GRANTS** the Motion and **DISMISSES** the Complaint in its entirety.

**IT IS SO ORDERED.**

Dated:   June 14, 2024
         New York, New York

*Martin Glenn*

MARTIN GLENN
Chief United States Bankruptcy Judge